UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
Gilbert Timsit,

                *Plaintiff*,

   -*against*-

Ztvi Zev Schwartz, 741 Hancock, LLC, 223 Howard, LLC, 37 Covert, LLC, BSD Quincy LLC, McKarkein Investment IDF LLC, McKarkein Capital LLC, and Berkshire Abstract & Title Agency, LLC,

                *Defendants*.
-----------------------------------------------------------------X

**COMPLAINT**

**Case No.:**

Plaintiff Gilbert Timsit ("G. Timsit", or the "Plaintiff"), by his undersigned attorneys, Levin-Epstein & Associates, P.C., as and for his complaint against Defendants Ztvi "Zev" Schwartz ("Schwartz"), 741 Hancock, LLC ("Hancock LLC"), 223 Howard, LLC ("Howard LLC"), 37 Covert, LLC ("Covert LLC"), BSD Quincy LLC ("Quincy LLC"), McKarkein Investment IDF LLC ("McKarkein IDF"), McKarkein Capital LLC ("McKarkein Capital", and together with Schwartz, Hancock LLC, Howard LLC, Covert LLC, Quincy LLC, and McKarkein IDF, the "McKarkein Defendants") and Berkshire Abstract & Title Agency, LLC ("Berkshire", and together with the McKarkein Defendants, the "Defendants"), states as follows:

**PRELIMINARY STATEMENT**

1.     The nature of this action seeks to uncover what happened to G. Timsit's wires of funds in the aggregate amount of $1.3 million. G. Timsit's $1.3 million was supposed to have been held in escrow by Berkshire until such time as Schwartz and the McKarkein Defendants documented G. Timisit's funds as loans, secured by eight (8) real estate properties located in New York. This never happened.

2.     Context is crucial here. While it is unusual, G. Timsit wired $1.3 million to

Berkshire without any contractual documentation because his son, Robert Timsit ("R. Timsit"), who G. Timsit trusted (and still trusts), had partnered with Schwartz on certain real estate investments in the United States. Unbeknownst to G. Timsit (and R. Timsit), at the time the money was wired, Schwartz had organized the equivalent of corporate *coup d'etat* that undermined R. Timsit's involvement and ownership in the real estate partnership that operated and managed the real estate investments, McKarkein IDF.

3.  As a result of Schwartz's unlawful acts, R. Timsit has been frozen-out of McKarkein IDF. R. Timsit cannot access McKarkein IDF's books and records[1], and R. Timsit has no current information about McKarkein IDF. Consequently, the status of G. Timsit's wire proceeds in the amount of $1.3 million has been indeterminable.

4.  Despite repeated requests, through intermediaries, Schwartz, McKarkein IDF, McKarkein LLC, and Berkshire have stonewalled G. Timsit. His money is unaccounted for; he has never received any documentation of any kind concerning the wire proceeds of $1.3 million; and he has no information about the whereabouts of the $1.3 million. This is not an isolated incident.

5.  It is a method of operations and part of a series of actions related to interrelated companies and real estate development projects involving claims of alter ego liability, veil piercing, crisscrossed financing, and self-dealing. At the center of these are Schwartz, who, through a consistent pattern of wrongdoings, converted what was supposed to be a group of separated satellite real estate projects, each involving different investors, bondholders and

---

[1] Pursuant to that certain General Partnership Agreement between Schwartz, and R. Timsit, dated March 14, 2017 (the "Partnership Agreement"), R. Timsit had the following information rights with respect to McKarkein Capital:

> 14. Zev and Robert will be the benefactors of McKarkein Capital LLC, and will have access to the bank account. An additional operational bank account will be set up, where funds will be transferred to, in which the management company will have access to the funds.

different companies, into what was *de facto* one single entity intermingling funds, such that the failure of one may result in the collapse of all.

6. The way that the projects were structured is that Schwartz set up a parent company, Geneva International Insurance, Inc. ("Geneva International"), a private placement life insurance company, nominally for tax efficiency purposes, that wholly owns McKarkein IDF. McKarkein IDF is supposed to have owned the membership interests of the project-level limited liability companies, such as Hancock LLC, Howard LLC, Covert LLC, and Quincy LLC. Based on information and belief, Schwartz, who is an Israeli attorney, misled and defrauded R. Timsit, in that the corporate organizational structure that placed Geneva International at the apex of the organizational structure did not list R. Timsit as an owner nor did any of the organizational documents.

7. Based on information and documentation provided by R. Timsit, Schwartz's excuse for not including R. Timsit, who had personally invested over $7 million, is that Geneva International functioned as a tax efficient special purpose vehicle that would inure to R. Timsit's benefit. Geneva International owned a private placement life insurance policy insuring the life of Schwartz's mother, Naomi Mauer ("Mauer"), that inured to the financial benefit of all the companies that Geneva International owned. According to R. Timsit, Schwartz repeatedly promised R. Timsit that R. Timsit's 50/50 ownership would be properly documented. This never happened.

8. While the Partnership Agreement required Schwartz to document, *inter alia*, R. Timsit's ownership interests, Schwartz has simply failed to properly account for R. Timsit's ownership interest in any other document except for the Partnership Agreement. Now, after several months of Schwartz's stalling and broken promises to account for G. Timsit's funds (and R. Timsit's ownership interests), this lawsuit is a last resort to uncover what happened to G.

Timsit's $1.3 million.

9. As set forth more fully below, Plaintiff asserts, *inter alia*, claims arising out of the wrongful acts of Defendants, including, but not limited to: (i) breach of contract; (ii) unjust enrichment; (iii) promissory estoppel; (iv) an accounting; (v) conversion; and (vi) money had and received. This action further seeks (vi) a permanent injunction prohibiting the McKarkein Defendants from selling, mortgaging or otherwise encumbering or disposing of the subject real estate properties; as well as (vii) a constructive trust over the subject real estate properties for the benefit of Plaintiff and the $1.3 million.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction based on diversity pursuant to 28 U.S.C. § 1332(a)(1) because this case is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.  As set forth more fully below, Plaintiff is a citizen of Israel and Defendants are citizens of New York, New Jersey, and Delaware.  Thus, Plaintiff and Defendants are considered diverse under 28 U.S.C. § 1332(a)(1).

11. Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391(b) and (c), because Defendants are transacting and doing business in this judicial district and are subject to the personal jurisdiction of this Court, and because a substantial part of the wrongful events giving rise to the claims asserted herein occurred in this District, and a substantial portion of the wrongful events at issue have arisen and/or will arise.

## THE PARTIES

**PLAINTIFF GILBERT TIMSIT**

12. Plaintiff Gilbert Timsit is an individual residing in Israel.

**DEFENDANT ZTVI ZEV SCHWARTZ**

13. Defendant Ztvi "Zev" Schwartz is an individual residing in Brooklyn, New York, who is engaging (or who was engaged) in business within this judicial district during the relevant time period.

14. Defendant Schwartz possesses or possessed operational control over McKarkein IDF, McKarkein Capital, Hancock LLC, Howard LLC, Covert LLC, and Quincy LLC, or controlled significant functions of McKarkein IDF, McKarkein Capital, Hancock LLC, Howard LLC, Covert LLC, and Quincy LLC.

**DEFENDANT MCKARKEIN INVESTMENT IDF LLC**

15. Upon information and belief, Defendant McKarkein Investment IDF LLC was and is a domestic limited liability company organized and existing under the laws of the State of Delaware, and has a principal place of business at 775 Bloomfield Avenue, Suite #2A, Clifton, NJ 07012.

16. Defendant McKarkein IDF holds 100% of the capital interest in Defendants Hancock LLC, Howard LLC, Covert LLC, and Quincy LLC which were formed for the purpose of the purchase, construction, development and sale of the 741 Hancock Property, the Howard Property, the Covert Property, and the Quincy Property (defined below). McKarkein IDF, in turn, is wholly owned by Geneva International Insurance, Inc.

17. Upon information and belief, McKarkein IDF is the record owner of the real property located at 1765 Carroll Avenue, Merrick, NY 11566 (Block 081, Lot: 364) (the "Carroll Property").

18. Upon information and belief, McKarkein IDF is the record owner of the real property located at 2237 Tiebout Avenue, Bronx, NY 10457 (Block: 3145, Lot: 43) (the "Tiebout Property").

5

19. Upon information and belief, McKarkein IDF is the record owner of the real property located at 357 Hancock Street, Brooklyn, NY, 11216 (Block: 1835, Lot: 57) (the "357 Hancock Property").

20. Upon information and belief, McKarkein IDF is the record owner of the real property located at 1728 Cornelius Avenue, Wantagh, NY, 11792 (Block: 411, Lot: 408) (the "Cornelius Property").

**DEFENDANT MCKARKEIN CAPITAL LLC**

21. Upon information and belief, Defendant McKarkein Capital LLC was and is a domestic limited liability company organized and existing under the laws of the State of New Jersey, and has a principal place of business at 775 Bloomfield Avenue, Suite #2A, Clifton, NJ 07012. According to that certain Operating Agreement of McKarkein Capital, dated July 1, 2016, Schwartz holds 100% of the membership interests in McKarkein Capital.

22. McKarkein Capital was formed as a pass-through entity that provided certain administrative services to the McKarkein Defendants, *to wit* the distribution of capital.

**DEFENDANT 741 HANCOCK, LLC**

23. Upon information and belief, Defendant 741 Hancock, LLC was and is a domestic limited liability company organized and existing under the laws of the State of New York, and is the record owner of the real property located at 741 Hancock Street, Brooklyn, NY 11233 (Block 1658, Lot: 82) (the "741 Hancock Property", and together with the 357 Hancock Property, the "Hancock Properties").  According to that certain Operating Agreement of 741 Hancock, LLC, dated November 7, 2017, McKarkein IDF holds 100% of the membership interests in Hancock LLC.

**DEFENDANT 223 HOWARD, LLC**

24. Upon information and belief, Defendant 223 Howard, LLC was and is a domestic

Case 1:20-cv-09337 Document 1 Filed 11/06/20 Page 7 of 19


corporation organized and existing under the laws of the State of New York, and is the record owner of the real property located at 223 Howard Avenue Brooklyn, NY 11233 (Block 1519, Lot: 5) (the "Howard Property"). According to that certain Operating Agreement of 223 Howard, LLC, dated September 14, 2017, Mauer holds "100.00%" of the membership interests in Howard LLC. Upon information and belief, Mauer is a citizen of Brooklyn, New York.

**DEFENDANT 37 COVERT, LLC**

25. Upon information and belief, Defendant 37 Covert, LLC was and is a domestic limited liability company organized and existing under the laws of the State of New York, and is the record owner of the real property located at 37 Covert Street Brooklyn, NY 11207 (Block 3414, Lot: 51) (the "Covert Property"). According to that certain Operating Agreement of 37 Covert, LLC, dated November 7, 2017, McKarkein IDF holds 100% of the membership interests in Covert LLC.

**DEFENDANT BSD QUINCY LLC**

26. Upon information and belief, Defendant BSD Quincy LLC was and is a domestic limited liability company organized and existing under the laws of the State of New York, and is the record owner of the real property located at 228 Quincy Street , Brooklyn, New York 11235 (Block 1807, Lot: 37) (the "Quincy Property"). According to that certain Operating Agreement of BSD Quincy LLC, dated November 7, 2017, McKarkein IDF holds 100% of the membership interests in Quincy LLC.

**DEFENDANT BERKSHIRE ABSTRACT & TITLE AGENCY, LLC**

27. Upon information and belief, Defendant Berkshire Abstract & Title Agency, LLC was and is a domestic limited liability company organized and existing under the laws of the State of New Jersey, and has a principal place of business at 141 Ayers Court, Suite 1B, Teaneck, NJ 07666. Upon information and belief, Berkshire's member is not a citizen of Israel.

**FACTUAL ALLEGATIONS**

28. In May 2019, R. Timsit, in his capacity as an equity owner of McKarkein IDF, entered into an oral agreement with G. Timsit, whereby G. Timsit loaned McKarkein IDF the principal amount of $1.3 million, secured by eight (8) real estate properties located in New York, *to wit*: the Secured Properties[2] (the "Loan").

29. The proceeds of the Loan were to be allocated according to McKarkein IDF's discretion; provided however, that G. Timsit received first lien security interest in real estate properties owned by the McKarkein Defendants.

30. The terms of the Loan were as follows: the principal amount of the loan was $1,300,000; the Loan accrued interest at an annual rate of 15% (12% net); the Loan was secured by the Secured Properties, and McKarkein IDF agreed to repay the outstanding principal and accrued interest on the Loan within one (1) year. The term of the Loan was one (1) year. The Loan is now in default.

31. On June 17, 2019, Plaintiff, in furtherance of the Loan, caused a bank wire transfer from his bank account totaling $750,000 to be issued to Berkshire on behalf of McKarkein IDF (the "June 2019 Transfer Payment"). A true and correct copy of the bank confirmation evidencing the June 2019 Transfer Payment is annexed hereto as **Exhibit "A"**.

32. On September 19, 2019, Plaintiff, in furtherance of the Loan, caused a second bank transfer from his bank account totaling $550,000 to be issued to Berkshire on behalf of the McKarkein IDF (the "September 2019 transfer Payment", and together with the June 2019 Transfer Payment, the "Transfer Payments"). A true and correct copy of the bank confirmation evidencing the September 2019 Transfer Payment is annexed hereto as **Exhibit "B"**.

---

[2] The "Secured Properties" refer to the Carroll Property, the Tiebout Property, the Hancock Properties, the Cornelius Property, the Howard Property, the Covert Property, the Quincy Property.

33. Plaintiff fulfilled his obligations to make the required payments due on the Loan.

34. To date, the McKarkein Defendants have failed and refused to repay the Loan to Plaintiff.

35. Defendant Schwartz had knowledge of the terms of the Loan. Upon information and belief, R. Timsit had written and verbal conversations with Defendant Schwartz concerning the Loan, based on information provided by R. Timsit. Defendant Schwartz consented to the Loan, based on representations made by G. Timsit. A true and correct copy of the September 17, 2019 and June 11, 2019 WhatsApp conversations between R. Timsit and Schwartz, evidencing Schwartz's knowledge of the Loan, is annexed hereto as **Exhibit "C"**.

36. R. Timsit had the authority to enter into the Loan on behalf of McKarkein IDF, pursuant to the Partnership Agreement. The Partnership Agreement specifically provides that it is an "equal" partnership agreement, according to Paragraph 2. Paragraph 2 of the Partnership Agreement further provides that:

> "Zev and Robert decided to amend their current General MOU agreement from August 12, 2016 to an equal Partnership agreement, going forward as detailed in this agreement."

37. Paragraph 4 of the Partnership Agreement further provides that:

> "All revenues, costs, profits and encumbrances from McKarkein Capital LLC and from each and any of the properties, including Zev's properties, Zev's and Robert's Properties and Newly acquired Properties, as listed in Annexes A, B and C, shall be shared equally between Zev and Robert, in accordance with and subject to the terms of this agreement below."

38. Paragraph 16 of the Partnership Agreement further provides that:

> "Any decision is to be taken with the consent of both Robert and Zev."

39. R. Timsit had full information rights with respect to the McKarkein Defendants, pursuant to the Partnership Agreement. Paragraph 14 of the Partnership Agreement specifically provides that:

"Zev and Robert will be the benefactors of McKarkein Capital LLC, and will have access to the bank account."

40. Upon information and belief, Schwartz breached the Partnership Agreement by, *inter alia*, failing to: (i) distribute profits on an equal, pro-rata basis; (ii) obtain R. Timsit's consent in the operations and decision making process of McKarkein IDF; and (iii) provide R. Timsit with access to McKarkein IDF's bank account(s) on a contemporaneous basis.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION
**Breach of Contract**
**(As Against the McKarkein Defendants)**

41. Plaintiff repeats and incorporates paragraphs "1" through "40" as if fully set forth herein.

42. The business cultural context in which G. Timsit made the Loan must be understood and appreciated to understand why G. Timsit wired $1.3 million without any documentation. As is often the case in real estate scams and Madoff schemes, the perpetrator misuses his identity and cultural affinity in a confidence game against the victim. This is what G. Timsit believed occurred here, based on documentary evidence and information provided by R. Timsit.

43. Upon information and belief, in or around 2016, G. Timsit's son, R. Timsit, was introduced to Schwartz, in the State of Israel, through an Israeli real estate broker. Schwartz presented himself to R. Timsit as a practicing religious Jew, an Israeli-barred attorney, with an extensive history of successful real estate investments in the United States. R. Timsit, an observant Jew, believed that Schwartz was a likeminded, religiously observant Jew; and consequently, R. Timsit initially trusted Schwartz. This was a mistake.

44. Upon information and belief, at that time, Schwartz claimed to have extensive real

estate experience and showed R. Timsit purported documents representative of highly successful real estate transactions. Based on this information, R. Timsit decided to invest and work with Schwartz.

45. Upon information and belief, between 2016 and 2017, R. Timsit invested the total sum of $7 million with Schwartz, pursuant to certain agreements made by and between Schwartz and R. Timsit.

46. On or about August 12, 2016, for example, R. Timsit and Schwartz entered into that certain "MOU" (the "August 2016 MOU"). The August 2016 MOU stated that the "[g]oal is to buy together 10 buildings over the next few months." The August 2016 MOU further stated that:

> "Each building will be bought into a new specific LLC, which will be created for this purpose. The members of the LLC will be Zev, his mother Naomi Mauer and Robert. Zev and his mother are effectively one entity as far as Robert is concerned. Zev and Naomie will get together 50% of the LLC, Robert will get 50% of the LLC. Naomi Mauer (or any of her beneficiary or heir) will not be able to claim any rights from Robert on properties bought as per this MOU. Zev is taking full responsibility on any requests made by his mother (or any of her beneficiary or heir) regarding these deals. Robert is dealing solely with Zev in this partnership."

47. In the summer of 2016, R. Timsit and Schwartz entered into certain other "MOU" agreements for discrete, satellited real estate investments in New Jersey, wherein the limited liability company designated in each "MOU" agreement specified that R. Timsit owned 50% of the membership interests of each of the limited liability companies, based on information provided by R. Timsit.

48. Upon information and belief, the terms of the agreed-upon MOUs were never carried over into the organizational documents for each of the project level agreements.

49. Upon information and belief, since the transactional documents for R. Timsit's investment did not reflect the terms of the MOUs, R. Timsit and Schwartz entered into the

Partnership Agreement that was, once and for all, supposed to have resulted in the proper documentation of R. Timsit's ownership interests.

50. Paragraph 2 the Partnership Agreement specifically provided that:

"Zev and Robert decided to amend their current General MOU agreement from August 12, 2016 to an equal Partnership agreement, going forward as detailed in this agreement."

51. While Schwartz executed the Partnership Agreement, as of this filing, the organizational documents of the project level entities that own the real estate that R. Timsit invested in still do not list R. Timsit as an owner or member, based on information provided by R. Timsit.

52. In May 2019, R. Timsit, in his capacity as an equity owner of McKarkein IDF, entered into an oral agreement with Plaintiff, whereby Plaintiff loaned $1.3 million to McKarkein IDF in exchange for the McKarkein Defendants' promise to repay the principal balance of $1.3 million, plus interest at an annual rate of 15%, within one (1) year, on a fully secured basis.

53. Plaintiff timely performed his obligations and paid the Transfer Payments to the McKarkein Defendants.

54. The McKarkein Defendants accepted the Transfer Payments.

55. To date, the McKarkein Defendants have failed and refused to repay the Loan to Plaintiff.

56. The McKarkein Defendants' failure to repay the Loan constitutes a breach of the' oral agreement made by and between G. Timsit and R. Timsit on behalf of McKarkein IDF and the McKarkein Defendants.

57. Upon information and belief, Schwartz had knowledge of this Loan and consented to it.

58. As a result of the McKarkein IDF's breach, Plaintiff has been damaged in an amount no less than the principal sum of $1.3 million, plus accrued interest at 15%.

## AS AND FOR A SECOND CAUSE OF ACTION
### Unjust Enrichment
### (As Against the McKarkein Defendants)

59. Plaintiff repeats and incorporates paragraphs "1" through "58" as if fully set forth herein.

60. In May 2019, R. Timsit, in his capacity as an owner of McKarkein IDF, entered into an oral agreement with Plaintiff, whereby Plaintiff loaned $1.3 million to McKarkein IDF in exchange for the McKarkein Defendants' promise to repay the principal balance of $1.3 million, plus interest at an annual rate of 15%, within one (1) year, on a fully secured basis.

61. Plaintiff timely performed his obligations and paid the Transfer Payments to the McKarkein Defendants.

62. The McKarkein Defendants accepted the Transfer Payments.

63. To date, the McKarkein Defendants have failed and refused to repay the Loan to Plaintiff.

64. As a result of the McKarkein Defendants' unlawful retention of the Loan without repayment, Plaintiff has been damaged in an amount not less than $1.3 million, plus interest at an annual rate of 15%.

65. The retention of this benefit by the McKarkein Defendants would be inequitable and unjust if Defendants fail to compensate Plaintiff for the full value of the Loan.

66. As a result of the McKarkein Defendants' breach, Plaintiff has been damaged in an amount no less than the principal sum of $1.3 million, plus accrued interest at 15%.

## AS AND FOR A THIRD CAUSE OF ACTION
### Promissory Estoppel
**(As Against the McKarkein Defendants)**

67. Plaintiff repeats and incorporates paragraphs "1" through "66" as if fully set forth herein.

68. The McKarkein Defendants promised to repay the Loan to Plaintiff.

69. The McKarkein Defendants knew or should have reasonably expected, that Plaintiff would rely on the McKarkein Defendants' promises to repay such amounts.

70. In reasonable reliance on the promises made by the McKarkein Defendants, Plaintiff took actions to his detriment by paying the Transferred Payments to the McKarkein Defendants.

71. The McKarkein Defendants failure to honor their promise to repay the Loan is unjust and has caused Plaintiff to suffer damages in an amount no less than $1.3 million, plus accrued interest at 15%.

## AS AND FOR A FOURTH CAUSE OF ACTION
### Accounting
**(As Against the McKarkein Defendants)**

72. Plaintiff repeats and incorporates paragraphs "1" through "71" as if fully set forth herein.

73. In May 2019, R. Timsit, in his capacity as an owner of McKarkein IDF, entered into an oral agreement with Plaintiff, whereby Plaintiff loaned $1.3 million to McKarkein IDF in exchange for the McKarkein Defendants' promise to repay the principal balance of $1.3 million, plus interest at an annual rate of 15%, within one (1) year.

74. Plaintiff timely performed his obligations and paid the Transfer Payments to the McKarkein Defendants.

75. The McKarkein Defendants accepted the Transfer Payments.

76. To date, the McKarkein Defendants have failed and refused to repay the Loan to Plaintiff.

77. The McKarkein Defendants failure to repay the Loan constitutes a breach of the oral agreement.

78. Plaintiff is entitled to an accounting to determine the full amount owed to him by the McKarkein Defendants pursuant to their oral agreement.

## AS AND FOR A FIFTH CAUSE OF ACTION
### Conversion
### (As Against the McKarkein Defendants)

79. Plaintiff repeats and incorporates paragraphs "1" through "78" as if fully set forth herein.

80. Plaintiff has a legal, immediate, and superior right to identifiable personal property in the form of the Transfer Payments paid by Plaintiff to the McKarkein Defendants and currently held by the McKarkein Defendants.

81. The McKarkein Defendants are exercising unauthorized dominion and control over Plaintiff's Transfer Payments.

82. The McKarkein Defendants have an obligation to return the Transfer Payments in satisfaction of the Loan from Plaintiff to the McKarkein Defendants.

83. As a direct and proximate result of the McKarkein Defendants' unlawful conversion and unauthorized dominion and control over Plaintiff's Transfer Payments, Plaintiff has suffered damages in the amount of $1.3 million.

## AS AND FOR A SIXTH CAUSE OF ACTION
### Permanent Injunction

84. Plaintiff repeats and incorporates paragraphs "1" through "83" as if fully set forth

herein.

85. Plaintiff is entitled to a permanent injunction prohibiting Defendants from selling, mortgaging or otherwise encumbering or disposing of the Secured Properties.

## AS AND FOR A SEVENTH CAUSE OF ACTION
**Constructive Trust**

86. Plaintiff repeats and incorporates paragraphs "1" through "85" as if fully set forth herein.

87. Plaintiff loaned the McKarkein Defendants $1.3 million in reliance on the McKarkein Defendants' promise to repay the Loan funds, with interest, after one (1) year.

88. To date, the McKarkein Defendants have failed and refused to repay the Loan to Plaintiff.

89. By reason of the foregoing, Plaintiff is entitled to the imposition of a constructive trust over the Secured Properties, for the benefit of Plaintiff, and the $1.3 million.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
**Money Had and Received**
**(As Against the McKarkein Defendants)**

90. Plaintiff repeats and incorporates paragraphs "1" through "89" as if fully set forth herein.

91. Plaintiff is the legal owner of the Transferred Payments.

92. To date, the Transferred Payments have not been returned to Plaintiff.

93. The McKarkein Defendants have no right in or valid claim to the Transferred Payments.

94. The McKarkein Defendants have benefited from the receipt of the Transferred Payments, including by, upon information and belief, using it to finance construction of their own projects with their own knowledge and consent.

95. Under principles of equity and good conscience, the McKarkein Defendants should not be entitled to keep the Transferred Payments they received from Plaintiff.

96. Based upon the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial but believed to be at least $1.3 million, plus interest thereon.

## AS AND FOR AN NINTH CAUSE OF ACTION
### Declaratory Judgment
### (As Against Defendant Berkshire Abstract & Title Agency, LLC)

97. Plaintiff repeats and incorporates paragraphs "1" through "96" as if fully set forth herein.

98. Plaintiff is entitled to a declaratory judgment that Defendant Berkshire must return the Transfer Payments to Plaintiff.

## AS AND FOR A TENTH CAUSE OF ACTION
### Unjust Enrichment
### (As Against Defendant Berkshire Abstract & Title Agency, LLC)

99. Plaintiff repeats and incorporates paragraphs "1" through "98" as if fully set forth herein.

100. Defendants accepted the Transfer Payments, through Berkshire.

101. To date, Berkshire has failed and refused to repay the Loan to Plaintiff.

102. As a result of the Berkshire's unlawful retention of the Loan without repayment, Plaintiff has been damaged in an amount not less than $1.3 million, plus interest at an annual rate of 15%.

103. The retention of this benefit by Berkshire would be inequitable and unjust if Berkshire fails to compensate Plaintiff the full value of the Loan.

104. As a result of Berkshire's breach, Plaintiff has been damaged in an amount no less than the principal sum of $1.3 million, plus accrued interest at 15%.

WHEREFORE, Plaintiff respectfully demands judgment against Defendants as follows:

A. On the First Cause of Action, awarding damages to Plaintiff in an amount no less than $1.3 million, plus accrued interest at 15%;

B. On the Second Cause of Action, awarding damages to Plaintiff in an amount no less than $1.3 million, plus accrued interest at 15%;

C. On the Third Cause of Action, awarding damages to Plaintiff in an amount no less than $1.3 million, plus accrued interest at 15%;

D. On the Fourth Cause of Action, (i) a decree for an equitable accounting of all funds that Defendants received directly or indirectly; (ii) a decree ordering Defendants to deliver a copy of all records of Defendants, regardless of form that they are stored, to allow Plaintiff, to determine where funds and assets of Defendants have been paid, transferred or diverted and otherwise dispersed in an improper manner;

E. On the Fifth Cause of Action, awarding damages to Plaintiff in an amount no less than $1.3 million, plus accrued interest at 15%;

F. On the Sixth Cause of Action, a permanent injunction prohibiting the defendants from selling, mortgaging or otherwise encumbering or disposing of the Secured Properties;

G. On the Seventh Cause of Action, imposition of a constructive trust over the Secured Properties, for the benefit of Plaintiff;

H. On the Eighth Cause of Action, awarding damages to Plaintiff in an amount no less than $1.3 million, plus accrued interest;

I. On the Ninth Cause of Action, a declaratory judgment that Defendant Berkshire must return the Transfer Payments to Plaintiff;

J. On the Tenth Cause of Action, awarding damages to Plaintiff in an amount no less than $1.3 million, plus accrued interest at 15%;

K. Such other relief as this Court deems just and proper.

Dated: New York, New York
November 6, 2020

/s/ Joshua D. Levin-Epstein
Joshua D. Levin-Epstein, Esq.
Levin-Epstein & Associates, P.C.
420 Lexington Avenue, Suite 2525
New York, NY 10170
Tel: (212) 792-0046
Email: Joshua@levinepstein.com
*Attorneys for Plaintiff*